UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

    -v-                                                      No. (S9) 13 CR 521-LTS

ADAM SAMIA and
CARL DAVID STILLWELL,

               Defendants.

---

OPINION AND ORDER

APPEARANCES:

| | |
|---|---|
| PREET BHARARA<br>United States Attorney<br>Southern District of New York | THOMPSON & KNIGHT LLP<br>By: Robert W. Ray<br>900 Third Avenue<br>New York, New York 10022 |
| By:   Emil J. Bove III, Assistant United<br>       States Attorney<br>       Michael D. Lockard, Assistant United<br>       States Attorney | *Attorneys for Defendant Carl David Stillwell* |
| One St. Andrew's Plaza<br>New York, New York 10007 | ROTHMAN, SCHNEIDER, SOLOWAY &<br>STERN LLP<br>By: Jeremy Schneider, Esq.<br>      David Stern, Esq.<br>100 Lafayette Street, Suite 501<br>New York, New York 10013 |
| *Attorneys for the United States of America* | *Attorneys for Defendant Adam Samia* |

LAURA TAYLOR SWAIN, United States District Judge

Defendants Adam Samia and Carl David Stillwell are charged, in superseding indictment S9 13 CR 531, with five counts relating to the alleged murder of Catherine Lee, a real estate agent, in the Philippines on February 12, 2012. (See docket entry no. 253, Ninth Superseding Indictment (the "Indictment"), at ¶ 2.)

Count One of the Indictment charges each Defendant with participation in a conspiracy to commit murder-for-hire in violation of 18 U.S.C. sections 1958(a) and 3238. Count Two of the Indictment charges each Defendant with the commission of murder-for-hire in violation of 18 U.S.C. sections 1958(a), 3238, and 2. Count Three of the Indictment charges each Defendant with participation in a conspiracy to murder and kidnap in a foreign country in violation of 18 U.S.C. sections 956(a)(1), 956(a)(2)(A), and 3238. Count Four of the Indictment charges each Defendant with the use and carrying of a firearm in relation to a crime of violence constituting murder in violation of 18 U.S.C. sections 924(j), 3238, and 2. Count Five of the Indictment charges each Defendant with participation in a conspiracy to commit money laundering in violation of 18 U.S.C. sections 1956(h) and 3238.

Defendants have moved to dismiss the Indictment, for a bill of particulars, and for the return of firearms seized by the Government at the time of Defendants' arrests. Stillwell has moved to suppress certain post-arrest statements. This Opinion addresses all aspects of Defendants' motions except that relating to the return of firearms, which remains under consideration by the Court and will be addressed in a separate order.

The Court has carefully considered the arguments and submissions of all parties, including at oral argument. For the reasons set forth below, Defendants' motions are granted in part and denied in part. Specifically, Counts One and Two of the Indictment are dismissed, and Defendants' motions (except as to the return of firearms) are denied in all other respects.

I. BACKGROUND

Defendants were allegedly members of a wide-ranging criminal enterprise. The allegations in the Indictment include the following pertinent facts. In October 2011, while Samia was in the United States, an unindicted co-conspirator ("CC-1") emailed Samia to tell him that he was "on standby" to perform "Ninja stuff" for the criminal enterprise. (Indictment ¶ 9(a).) CC-1 then emailed Samia in January 2012 to instruct Samia to travel to the Philippines. (Id. ¶ 9(c).) CC-1 also emailed a leader in the criminal enterprise, noting that Defendants would be owed "35,000" upon "Mission Success." (Id. ¶ 9(k).)

After traveling to the Philippines from North Carolina, on January 9, 2012, Samia emailed Stillwell, who was then located in the United States, providing Stillwell with instructions about Stillwell's travel to the Philippines. (Id. ¶ 9(f).) Stillwell flew from North Carolina to the Philippines on January 10, 2012. (Id. ¶ 9(g).) In the Philippines, Samia and Stillwell conducted surveillance on Catherine Lee's place of business and ultimately murdered Lee, who was not an American citizen, on February 12, 2012. (Id. ¶ 9(o).) On February 14, 2012, Samia submitted an "expense report" to CC-1. (Id. ¶ 9(q).) Defendants then sent a series of wire transfers back to individuals residing in North Carolina. (Id. ¶¶ 9(r)-(aa).) Stillwell returned to North Carolina on February 29, 2012; Samia returned on March 8, 2012. (Id. ¶¶ 9(z) & (bb).)

On July 14, 2015, a grand jury sitting in this District returned sealed indictment S8 13 CR 521, charging Samia and Stillwell in three counts that would become Counts Three, Four, and Five of the S9 Indictment. (See docket entry no. 166 (Indictment S8 13 CR 521).)

On July 22, 2015, Stillwell was arrested in North Carolina. (See docket entry no. 356, Ex. A (Amended Affidavit of Carl David Stillwell ("Stillwell Aff."), at ¶¶ 19-23.) Stillwell

is diabetic and takes regular insulin injections. (Stillwell Aff., ¶¶ 12-13.) On the morning of July 22, 2015, Stillwell had not yet taken his morning insulin injection and he had not eaten at the time of his arrest. (Id. ¶¶ 20-21.)

Federal agents questioned Stillwell after his arrest. This questioning was recorded on video. (See docket entry no. 345 (Declaration of Robert W. Ray ("Ray Decl.")), Ex. A (the "Video").) The video recording indicates that Stillwell was orally advised of his rights, including his right to have counsel present during questioning, at the outset of the session. Specifically, Stillwell was verbally advised of a series of rights written on an Advice of Rights Form, which he signed later in the session (Ray Decl. Ex. C ("Advice of Rights Form")): his right to remain silent; his right to speak to a lawyer before questioning, and to have a lawyer present during questioning; and his right to appointment of a lawyer if he could not afford one. Stillwell was also asked "Do you understand that?" by the agent after he read each right aloud. (Video at 11:15-14 - 11:16:55.) In response to the oral advice of rights, Stillwell, both verbally and non-verbally, indicated that he understood each of the rights as they were being read: he did not protest, ask clarifying questions, say 'no', or shake his head at any time. (See id. & Advice of Rights Form.) Stillwell verbally affirmed or acknowledged each of the rights that was read to him, at times making head and body gestures along with verbal acknowledgments. (Video at 11:15:14 - 11:16:15.)

Despite the video evidence of his comprehension of his rights, Stillwell asserts in his affidavit that he "was never asked whether [he] (i) was willing to make a statement and answer questions, (ii) wanted a lawyer, or (iii) understood [his] rights." (Stillwell Aff. ¶ 48.) This portion of Stillwell's affidavit tracks the language of four statements at the bottom of the Advice of Rights form that were not read out loud to Stillwell at the outset of the session. (See

Advice of Rights Form.) While those statements were not read, Stillwell had acknowledged that he understood that he had "the right to talk to a lawyer for advice before [the agents] ask[ed him] any questions," that he had "the right to have a lawyer with [him] during questioning," and that if he could not "afford a lawyer one [would] be appointed to [represent him] before any questioning." (Video at 11:15 - 11:16.[1]) Additionally, at the conclusion of the verbal advice of rights, the agents told Stillwell that they would like to talk to him, and Stillwell responded "Okay." (Video at 11:16.)

The agents then proceeded to question Stillwell for approximately three hours. (Stillwell Aff. ¶ 36.) About 90 minutes into the interrogation, Stillwell made what he acknowledges to be "incriminating statements." (Id.) At the conclusion of Stillwell's interrogation, he was presented with, and signed, the Advice of Rights form that included the rights advice that the agents had read out loud at the start of the interrogation and the Acknowledgment of Rights portion. (See Video at 11:15 - 11:16; Stillwell Aff. ¶ 46; Advice of Rights Form.)

## II. DISCUSSION

### A. Motion to Dismiss

Defendants have moved pursuant to Federal Rules of Criminal Procedure 7 and 12(b)(2) to dismiss the Indictment, arguing principally that the criminal statutes underlying

---

[1] In Stillwell's Supplemental Memorandum of Law submitted in connection with the instant motion practice (docket entry no. 350), Stillwell's counsel provided a transcript of Stillwell's exchanges with the agents. The Court has quoted from that transcript in this factual summary.

Counts One, Two, and Three of the Indictment cannot be applied to extraterritorial conduct.[2]
Focusing on the alleged commission of the murder outside of the United States and the
Government's failure to allege facts explicitly demonstrating an agreement to commit the
murder that predated Defendants' travel to the Phillippines, Defendants assert that application of
the statutes here is necessarily extraterritorial. For the reasons stated below, Defendants'
extraterritoriality argument is unavailing. The Indictment, however, fails to allege sufficiently
the elements of two of the charged crimes.

Because "federal crimes are solely creatures of statute, a federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute." United States v. Aleynikov, 676 F.3d 71, 75–76 (2d Cir. 2012) (internal quotation marks and citations omitted). In evaluating a motion to dismiss, the Court "accept[s] as true all of the allegations of the indictment." United States v. Goldberg, 756 F.2d 949, 950 (2d Cir. 1985).

Counts One and Two of the Indictment charge the Defendants with committing and conspiring to commit murder for hire in violation of 18 U.S.C. section 1958(a). That statute, in relevant part, makes it a crime to "travel[] in or cause[] another . . . to travel in interstate or foreign commerce . . . with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value." 18 U.S.C.S. § 1958(a) (LexisNexis 2010).

Section 1958(a), by its plain terms, criminalizes not murder, but (1) interstate or

---

[2] Although Defendants' motion is repeatedly characterized as one to "dismiss the Indictment," Defendants' moving papers make no arguments for dismissal of either Count Four or Count Five, and the Court therefore does not address those Counts in its analysis.

foreign travel, (2) with the intent to commit a murder in violation of Federal or State law, (3) for pecuniary gain.  See, e.g., United States v. Delpit, 94 F.3d 1134, 1149 (8th Cir. 1996) ("[Section 1958] does not prohibit murder or attempted murder. Instead, it outlaws using interstate-commerce facilities with the intent that murder-for-hire be committed. Once the interstate-commerce facility is used with the required intent the crime is complete.").  Defendants' argument that the Indictment represents an extraterritorial application of Section 1958(a) is unavailing, as the Indictment plainly charges both Defendants with traveling in foreign commerce from within the United States to the Phillippines, thus satisfying the objective element of the offense.  Charging a defendant with a federal crime whose objective elements are satisfied by allegations of actions committed by the defendant inside the United States is not an extraterritorial application of federal criminal law.  Cf. United States v. Yousef, 327 F.3d 56, 86 (2d Cir. 2003) (discussing the presumption against extraterritoriality as operating when an indictment concerns "conduct outside the territorial jurisdiction of the United States").  Furthermore, Defendants' issues with respect to the sufficiency of the evidence that they actually intended to commit murder at the time they departed from the United States are ones for the jury; at this stage, the Government's allegation concerning such intent is sufficient.

   The Indictment is nonetheless defective with respect to the crimes charged in Counts One and Two because it does not identify, or allege facts demonstrating that Catherine Lee's murder violated, any provision of State or Federal law that prohibited the alleged murder, and thus does not sufficiently allege the mens rea element of the offenses charged in those Counts, which requires that Defendants intended to commit a murder that would violate Federal or State law.

   The Government argues that Section 1958's requirement that a defendant intend

to commit "a murder . . . in violation of the laws of any State or the United States" can be satisfied by showing that Defendants intended to violate 18 U.S.C. section 956. Section 956, however, is a conspiracy statute, not a substantive murder statute. It criminalizes "conspir[ing] with one or more persons . . . to commit at any place outside the United States an act that would constitute the offense of murder . . . if committed in the special maritime and territorial jurisdiction of the United States." 18 U.S.C.S. § 956(a)(1) (LexisNexis 2010). Section 956 addresses conspiracy to murder, not murder itself. This can be seen plainly by comparing the language of Section 956 with that of the Federal statutes that do criminalize murder (none of which specifically criminalizes the murder of a non-U.S. national abroad). See, e.g., 18 U.S.C.S. § 2332 ("Whoever kills a national of the United States, while such national is outside the United States . . . .") (LexisNexis 2010). Absent a Federal or State law criminalizing the murder of a non-United States national abroad under the circumstances alleged in the Indictment, the Government cannot establish intent to commit a murder in violation of Federal or State law, which is a necessary component of the mens rea element of Section 1958. Because there appears to be no such law, the Indictment fails to allege a violation of Section 1958. Accordingly, Count One (Conspiracy to Commit Murder-for-Hire) and Count Two (Murder-for-Hire) of the Indictment are dismissed.

Count Three charges Defendants with conspiring to commit a murder in a foreign country in violation of Section 956 and is alleged sufficiently in the Indictment. Section 956 criminalizes entering into a conspiracy while within the United States, where the object of the conspiracy is the commission, anywhere outside of the United States, of "an act that would constitute the offense of murder . . . if committed in the special maritime and territorial

jurisdiction of the United States." 18 U.S.C.S. § 956(a)(1).[3] The Indictment contains sufficient allegations of each element of this offense. Both Samia and Stillwell are alleged to have taken steps while in the United States, including their travel from North Carolina to the Philippines, in furtherance of the alleged conspiracy to murder Catherine Lee in the Philippines. Defendants' argument that this is an extraterritorial application of Section 956 is unavailing, because the conduct criminalized by Section 956 is conduct undertaken "within the jurisdiction of the United States," not extraterritorially, and the Indictment properly alleges such U.S.-based conduct by each Defendant in relating details of their U.S.-based communications and travel from a U.S. airport.[4]

Defendants' motion to dismiss Count Three of the Indictment is therefore denied.

### B. Motion for Bill of Particulars as to Surviving Count

Defendants' motion for a bill of particulars as to jurisdiction is also denied, as the Indictment alleges the elements of the offense charged in Count Three, and jurisdictional facts, with sufficient particularity to satisfy Federal Rule of Criminal Procedure 7. See United States v. Payden, 613 F. Supp. 800, 816 (S.D.N.Y. 1985) ("[I]f the defendant has been given adequate notice of the charges against him, the government is not required to disclose additional details about its case."); United States v. Tramunti, 513 F.2d 1087, 1113 (2d Cir. 1975) ("An indictment

---

[3] Section 1111 of Title 18 defines murder to include the premeditated unlawful killing of a human being, and provides for punishment of such conduct committed within the special maritime and territorial jurisdiction of the United States.

[4] Defendants' challenge to Count Three under the due process clause is therefore unavailing, as it is premised on the proposition that Section 956 is being applied to extraterritorial conduct.

need only provide sufficient detail to assure against double jeopardy and state the elements of the offense charged.").

### C. Stillwell's Motion to Suppress

Stillwell has moved to suppress his post-indictment, post-arrest statements on the ground that he did not knowingly and voluntarily waive his Sixth Amendment right to counsel, which had indisputably attached at the time he was questioned. See Massiah v. United States, 377 U.S. 201 (1964). Notwithstanding Stillwell's proffers in his Amended Affidavit[5] concerning his medical condition, his lack of recollection of affirmatively indicating that he understood the oral advice of rights, and his assertion that he does not believe that he was fully advised of his rights, the video of Stillwell's interrogation makes it plain that Stillwell was advised of his rights, including his right to counsel, acknowledged that he understood each of them, and made an affirmative, informed decision to speak with the agents. Although Stillwell did not sign the advice of rights form until the end of questioning, there is no requirement of a written waiver of Sixth Amendment rights, and the Second Circuit has upheld oral waivers in the similar context of Fifth Amendment rights. See United States v. Maldonado-Rivera, 922 F.2d 934, 972 (2d Cir. 1990) (noting that the defendant "had been given his rights, had stated he understood, had not been intimidated, had not invoked his right to remain silent, and had not requested an attorney" (emphasis added)).

---

[5] The Court offered Stillwell the opportunity to testify at an evidentiary hearing on his motion to suppress, but Stillwell declined to give testimony beyond that proffered in his Affidavit. (See Transcript of October 19, 2016 Hearing, at 34:18-35:4.) Accordingly, the factual record before the Court is limited to the video evidence and Stillwell's Affidavit.

Stillwell's assertion in his Amended Affidavit that he "believe[s] that [his] physical conditions adversely affected [his] ability to comprehend [his] constitutional rights and the magnitude of [his] decision to speak with the agents" is conclusory and is insufficient to overcome the clear video evidence of his intelligent responses to the oral advice of rights and of his engagement with the questioning agents, which continued for an extended period of time after the oral advice of rights. At the outset of questioning, when Stillwell was advised of his rights, and throughout the questioning, Stillwell appears alert and is responsive to the agents' questions. His responses are cogent and relevant to the topics, his body language is consistent with his verbal statements, and he demonstrates awareness of his surroundings, the content of the conversation, and the gravity of his situation. On this record, Stillwell's argument that his waiver was not knowing or voluntary lacks plausible factual support. Rather, the video recording demonstrates that, in spite of his medical condition, Stillwell was capable of knowingly and voluntarily waiving his Sixth Amendment rights, and in fact did so. See Berghuis v. Thompkins, 560 U.S. 370, 385 (2010) ("Although Miranda imposes on the police a rule that is both formalistic and practical when it prevents them from interrogating a subject without first providing them with a Miranda warning, . . . it does not impose a formalistic waiver procedure that a suspect must follow to relinquish those rights. As a general proposition, the law can presume that an individual who, with full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." (internal citation omitted)).

Stillwell's remaining argument for suppression of his statements relates to false and misleading statements made by the agents during the course of the questioning, in which the agents told Stillwell that they had already taken an incriminating statement from his co-

defendant, Samia. In Frazier v. Cupp, 394 U.S. 731 (1969), the Supreme Court addressed nearly identical circumstances. Frazier was questioned by law enforcement, and the questioning officer falsely told Frazier that his co-defendant Rawls had already been questioned and confessed; Frazier thereafter gave an incriminating statement. Id. at 737-38. Frazier challenged the admission of his statements, asserting that the coercive effect of the officer's falsehood rendered Frazier's statements involuntary. The Supreme Court held that "[t]he fact that the police misrepresented the statements that Rawls had made is, while relevant, insufficient, in our view, to make this otherwise voluntary confession inadmissible." Id. at 739. The United States Court of Appeals for the Second Circuit has recognized the continuing validity of this holding. See United States v. Anderson, 929 F.2d 96, 99 (2d Cir. 1991) ("Trickery does not make it impossible per se to find that a defendant voluntarily waived his rights."). The record evidence before the Court, including the video of Stillwell's questioning, does not evince any threats, use of force, or any other indicia of improper coercion; accordingly, as in Frazier, the questioning agents' misrepresentations do not suffice to make Stillwell's otherwise voluntary confession inadmissible.

The Government has carried its burden of demonstrating that Stillwell made a knowing and voluntary waiver of his rights prior to incriminating himself, and Stillwell has not demonstrated the existence of any fact issue as to coercion that would require an evidentiary hearing with agent testimony. Stillwell's motion to suppress his video-recorded statements is therefore denied.

III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Indictment is

granted as to Count One and Count Two of Indictment S9 13 CR 521. Defendants' motions are denied in all other respects, except as to the motion for the return of property, which remains under consideration.

The deadline for filing pre-trial motions is January 31, 2017. All such motions must be fully briefed by February 17, 2017. The final pre-trial conference in this matter is scheduled for March 3, 2017, at 2:00 p.m., with trial to commence on March 13, 2017, at 9:30 a.m.

SO ORDERED.

Dated: New York, New York
December 13, 2016

  /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge